Argued and submitted January 5, 2018, reversed and remanded
February 12, 2020

Sherri Kaye MILLER
and Joshua Miller,
*Plaintiffs-Appellants,*

*v.*

Cesar ELISEA,
*Defendant-Respondent,*
*and*

Jane Doe ELISEA,
*Defendant.*

Multnomah County Circuit Court
15CV29373; A164445

459 P3d 887

Plaintiffs appeal from a judgment dismissing their personal injury claim after the trial court, exercising its "gatekeeper" function to admit or exclude expert evidence under OEC 702, excluded the testimony of plaintiffs' expert witnesses, who were prepared to testify that plaintiff Sherri Miller's fibromyalgia was brought on by a neck injury that she sustained in a car accident caused by defendant. The trial court reasoned that the evidence was not scientifically valid because there was not consensus in the medical community that fibromyalgia can be brought on by physical trauma. *Held*: Whether there is consensus in the medical community concerning a theory of medical causation is relevant to the determination of the scientific validity of evidence, but its absence is not disqualifying. Plaintiffs' witnesses were prepared to give testimony that was scientifically principled and that was, therefore, scientifically valid. Defendant's expert witnesses' testimony that plaintiffs' theory of causation did not have consensus in the medical community was an issue to be considered by the trier of fact but was not dispositive in the court's function as a gatekeeper to admit or exclude expert evidence under OEC 702. The trial court erred in excluding the evidence.

Reversed and remanded.

Christopher J. Marshall, Judge.

Steven P. Krafchick argued the cause and filed the briefs for appellants.

Douglas F. Foley argued the cause for respondent. Also on the brief were Vernon Finley and Douglas Foley & Associates, PLLC.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Sercombe, Senior Judge.

ARMSTRONG, P. J.

Reversed and remanded.

## ARMSTRONG, P. J.

Plaintiffs Sherri and Joshua Miller appeal from a judgment dismissing their personal injury claim against defendant after the trial court excluded the testimony of plaintiffs' expert witnesses, who were prepared to testify that Sherri Miller's fibromyalgia was caused by a neck injury that she sustained in a car accident caused by defendant. We review the trial court's ruling excluding the evidence for legal error, *Jennings v. Baxter Healtcare Corp.*, 331 Or 285, 299, 14 P3d 596 (2000), conclude that the court erred in excluding the evidence, and therefore reverse and remand.

Several months after plaintiff Sherri Miller was in a minor car accident caused by defendant, she began to develop symptoms that were ultimately diagnosed as fibromyalgia. Plaintiffs brought this personal injury action, seeking damages for Sherri's injuries and for Joshua's loss of consortium as a result of defendant's negligence. Plaintiffs intended to call two physicians, Drs. Brown and Freeman, as expert witnesses who would testify that the physical trauma of the car accident caused Sherri's fibromyalgia.

Expert medical testimony must meet a test of "scientific validity." *Marcum v. Adventist Health System/West*, 345 Or 237, 240, 193 P3d 1 (2008). Defendant did not dispute the professional qualifications of Brown and Freeman or the diagnosis of fibromyalgia. But defendant sought to exclude their testimony as to causation based on the opinion of their own expert that there is insufficient concrete evidence of a causal link between physical trauma and the development of fibromyalgia. After a hearing under OEC 104(1),[1] the trial court determined that plaintiffs had not met the threshold to establish the admissibility of the evidence as scientific evidence, because plaintiffs had not shown that there is a

---

[1] OEC 104(1) provides:

"Preliminary questions concerning the qualifications of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court[.]"

"consensus in the medical community" that physical trauma can cause fibromyalgia.[2]

Plaintiffs appeal, contending that the trial court erred in excluding the expert testimony. Specifically, plaintiffs contend that the trial court mistakenly rejected the evidence based on a lack of consensus in the medical community concerning physical trauma as a potential cause of fibromyalgia. In response, defendant contends that there is no scientific support for a causal relationship between physical trauma and fibromyalgia onset and, for that reason, the trial court did not err in excluding expert testimony that depended on a theory that Sherri's fibromyalgia was caused by physical trauma.

The Supreme Court's most recent discussion of the admissibility of scientific evidence as to medical causation is in *Marcum*. There, the court considered the admissibility of expert testimony concerning the cause of the plaintiff's vasospastic disorder. The expert, having worked through a differential diagnosis,[3] determined that the plaintiff's vasospastic disorder had been caused by an injection of gadolinium into the plaintiff's hand for medical imaging, which had leaked from the vein into the surrounding tissue, causing damage. The issue in *Marcum*, similar to that presented here, was the scientific validity of the expert's theory of causation, in the absence of a "demonstrable mechanism of causation," and for which there was not some independent, verifiable corroboration. 345 Or at 240, 249. The court described the considerations relevant to the admissibility of scientific evidence under OEC 401, 702, and 403, *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and *State v. O'Key*,

---

[2] The trial court explained its ruling from the bench:

"[B]ased on all of the record that we have here and arguments of the parties, the Court's going to find that, as its gatekeeper function on the Rule 104 motion, that the plaintiff has not shown the required standard to show that consensus in the medical community, that the proffered evidence here about causation, meets the standard; so we would not allow the evidence of causation that's been proposed here."

[3] "'Differential diagnosis' is an accepted technique in which 'a doctor develops a list of all diseases that might cause a patient's symptoms and then, by a process of elimination, narrows the list' *** until the expert can identify the likely cause from among those remaining." *Marcum*, 345 Or at 247 (citing treatise).

321 Or 285, 899 P2d 663 (1995),[4] and the court's role as a "gatekeeper" in determining, based on a preponderance of the evidence, whether the scientific evidence is sufficiently valid to assist the trier of fact. *Marcum*, 345 Or at 243-45.

The court noted in *Marcum* that the general rules for the admissibility of scientific evidence in *Brown* and *O'Key*, while helpful, provide only limited guidance on the issue of scientific evidence of medical causation. *Marcum*, 345 Or at 245. The court instead referred for guidance to *Jennings*, which had also involved a question of medical causation. The court in *Jennings* explained that the inquiry into the admissibility of evidence of medical causation focuses on the differential diagnosis and whether the particular use of the differential diagnosis to determine causation has met the general test of scientific validity. 331 Or at 307. There the court had also concluded that OEC 702 does not preclude the admission of "novel" theories of causation that are scientifically valid. *Id.*

In *Marcum*, the court explained that the considerations that bear on the scientific validity of a differential diagnosis will vary depending on the type of injury. 345 Or at 248. For example, the court explained, in a case involving a toxic exposure, reliable testimony of causation might require extremely accurate data and methods, peer-reviewed studies, and small and controlled error rates, to "rule in" a possible cause. *Id.* In a case such as *Marcum*, involving a single event, where the injury was immediate and localized, it may be possible to rule in the exposure when there are few obvious alternative causes. *Id.* at 249. The court explained that, when "ruling in" a potential cause, "a trial court should insist that the causation theory be biologically plausible, that is, that the exposure could have caused the

---

[4] The primary source of a trial court's gatekeeping function with respect to expert testimony is OEC 702, which provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

Scientific knowledge does not assist the trier of fact if it is not sufficiently valid or reliable to warrant the unusually high degree of persuasive power that it is likely to have. *O'Key*, 321 Or at 291.

injury." *Id*. A particular possible cause should not necessarily be excluded "on the ground that the expert cannot describe the precise mechanism of causation or point to statistical studies of cause and effect." *Id*.

The court in *Marcum* described the factors relied on by the plaintiff's expert, including his own clinical experiences and observations, a review of medical literature, the suddenness of the onset of the plaintiff's symptoms after the injection, and the elimination of other potential causes. *Id*. The court explicitly rejected the defendant's view that the expert's testimony must be excluded in the absence of a well-understood mechanism of cause or published studies and acceptance of the particular theory of causation by the medical community. *Id*. at 250-51. The court concluded that the plaintiff had made an adequate showing of a scientifically valid reason for "ruling in" gadolinium extravasation as a potential cause of her vasospastic disorder. *Id*.

As in *Marcum*, the focus of this appeal is on the narrow question of the admissibility of scientific evidence of medical causation—specifically on whether the trial court erred in concluding that the opinions of plaintiffs' experts, who believed that physical trauma should be included among potential causes in a differential diagnosis of fibromyalgia, were scientifically valid in the absence of consensus in the medical community that physical trauma can cause fibromyalgia. The trial court's rationale here for excluding the disputed evidence was that, in the absence of concurrence in the medical community as to a theory of causation, the theory is not scientifically valid.

We disagree with the trial court. As the court said in *Marcum*, the general acceptance of a theory of causation in the medical community is certainly relevant to the determination of the scientific validity of a theory, but its absence is not disqualifying. *Id*. at 250-53 (absence of corroboration of the theory of medical causation through studies and comparisons is not a basis for exclusion of a theory of causation that is biologically plausible); *see Jennings*, 331 Or at 308-09 (although the degree of acceptance in the relevant community is a factor under *O'Key*, the admissibility of scientific evidence does not depend on peer acceptance or publication);

*Kennedy v. Eden Advanced Pest Technologies*, 222 Or App 431, 446, 193 P3d 1030 (2008) (a difference of opinion in the scientific community alone is not a basis to exclude scientific evidence).

Here, plaintiffs' experts supported their theory that physical trauma can cause fibromyalgia with evidence from their own clinical experience that there is a high correlation between physical trauma and fibromyalgia, peer-reviewed medical literature, and studies describing a possible neurological mechanism of causation. Freeman, an epidemiologist, described the process by which he determines whether a factor belongs in the causal framework, including an analysis of "plausibility," temporal relationship, and alternative explanations. In addressing plausibility, Freeman described a condition known as central sensitization, thought to be a mechanism of fibromyalgia. The condition, recognized in the medical literature and thought to be brought on by trauma, exists when the brain and spinal cord interpret a normally nonpainful stimulus as painful. Freeman also addressed the temporal relationship of Sherri's fibromyalgia to the car accident, and explained that Sherri's development of the condition was well within the typical time frame for the development of fibromyalgia after a traumatic event. Freeman also explained that, although Sherri's medical history showed that she had several preexisting conditions that were potentially related to central sensitization and "was somewhat fragile," until the accident, there was no record of escalating and increasingly frequent complaints of spreading pain, as characteristic of fibromyalgia.

Plaintiffs' evidence is of the type that the court in *Jennings* and *Marcum* said is scientifically valid under the *Brown/O'Key* factors. It is true that defendant's witness, Dr. Wolfe, contradicted Freeman, based on his own conclusion that there is no consensus in the medical community as to a connection between physical trauma and fibromyalgia, and his own conclusion that evidence to date showing a relationship between the two is unreliable because it has depended on patient self-reporting. Those issues are relevant but are for the trier of fact to consider in weighing the evidence; they are not dispositive in the court's function as

a gatekeeper to admit or exclude expert evidence. *O'Key*, 321 Or at 301 n 18 ("A trial court, acting as a gatekeeper, does not sit as a trier of fact to determine which side has presented the more credible (or more persuasive) expert or scientific evidence."). Rather, the trial court's function was to determine whether the offered evidence was based on scientifically valid principles. *Id.* at 303. We conclude here that it was. The trial court therefore erred in excluding the testimony of Brown and Freeman, and we reverse the judgment.

Reversed and remanded.